Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 2467 | **DATE** | 3/17/2000 |
| **CASE TITLE** | HARDWOOD LINE MANUFACTURING CO. vs. WHYCO TECHNOLOGIES, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The Court grants in part and denies in part Whyco's motion to dismiss which was converted to a motion for summary judgment [9-1]. The Court grants the motion as to count I (patent infringement) and denies the motion as to Count II (trademark infringement and unfair competition) of the complaint. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 21 2000 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | docketing deputy initials | 17 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| CG courtroom deputy's initials | | MAR 21 2000 date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HARDWOOD LINE MANUFACTURING CO., | )<br>)<br>) |
| Plaintiff, | )<br>) Judge Ronald A. Guzman |
| vs. | )<br>) 99 C 2467 |
| WHYCO TECHNOLOGIES, INC., | )<br>) |
| Defendant. | ) |

DOCKETED
MAR 21 2000

## MEMORANDUM OPINION AND ORDER

Hardwood Line Manufacturing Co. ("Hardwood") has sued Whyco Technologies, Inc. ("Whyco") alleging patent infringement and unfair competition concerning its electroplating barrel. Whyco moved to dismiss and in doing so relied on matters outside the Complaint. The motion was converted to a motion for summary judgment and both parties were given a reasonable opportunity to present material pursuant to Federal Rule of Civil Procedure ("Rule") 12(b). For the reasons provided in this Memorandum Opinion and Order, the motion is granted in part and denied in part.

## BACKGROUND

### A. Local General Rule 12(M) and 12(N)[1]

The following facts are either undisputed or deemed admitted because Hardwood's

---

[1] Since the filing of the parties' briefs on their motions, Local General Rule 12(M) and 12(N) have been retitled LR 56.1(a) and LR 56.1(b). In this Memorandum Opinion and Order, however, the Court will use the old numbering system in order to make it clear as to which briefs the Court is referring.

17

response did not refute Whyco's statement of fact and/or was unsupported by a citation to the record as required by the Local General Rule 12(M) and 12(N),[2] which this Court strictly enforces. *See Dade v. Sherwin-Williams Co.*, 128 F.3d 1135, 1139 (7th Cir. 1997). "Under rule 12(N), a failure to properly contest in the 12(N) statement material facts set out in the movant's 12(M) statement, constitutes a binding admission of those facts." *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). "In such a case, we 'depart from our usual posture of construing all facts in favor of the nonmoving party; rather we accept as true all material facts contained in [the moving party's] 12(m) statement.'" *Id.* (quoting *Johnson v. Gudmundsson*, 35 F.3d 1104, 1108 (7th Cir. 1994)).

The Court accepts as true all material facts in Whyco's Rule 12(M) statement that were supported by citations to the record but were not contested in accordance with Rule 12(N). For example, in sole support of Hardwood's denial of material facts set forth in paragraphs 4-5, 20-23, 25, 27-28, 31-33, 35, 39-41, 70-71, 73-76, and 78-79 of Whyco's Rule 12(M) statement, Hardwood relies on paragraph 23 of Anton Lazaro's ("Lazaro") declaration. This paragraph provides in full: "I have reviewed the Defendant's Local Rule 12(N) [sic] Statement and confirm that the statements made in paragraphs 4, 5, 7, 8, 9, 10, 11, 13-23, 25, 27, 28, 31-33, 35, 36, 39-42, and 61-79 are denied as set forth in Plaintiff's Local General Rule 12(N) statement which is filed herewith." (Lazaro Decl. ¶ 23.) Lazaro's summary denial does not properly contest material facts in Whyco's 12(M) statement because he provides no factual basis for the denial.

---

[2]Since the filing of the parties' briefs on their motions, Local General Rule 12(M) and 12(N) have been retitled LR 56.1(a) and LR 56.1(b). In this Memorandum Opinion and Order, however, the Court will use the old numbering system in order to make it clear as to which briefs the Court is referring.

The Court thus deems admitted paragraphs 4, 5, 20-23, 25, 27-28, 31-33, 35, 39-41, 70, 71, 73-76, and 78-79 of Defendant's 12(M) Statement of Material Facts.

**B. Facts**

Both Hardwood and Whyco manufacture electroplating barrels. "A typical electroplating barrel has a perforated wall, and is immersed in electrolyte solution while containing objects to be electroplated." (Defs.' Exs., Ex. C ("'286 patent"), col. 1, lines 7-10.) The barrel rotates so that the small objects tumble within the barrel while they are submerged in the electrolyte solution so that they may be electroplated. (Id., col. 1, lines 10-15.)

In April 1988, the United States Patent and Trademark Office ("PTO") issued U.S. Patent No. 4,740,286 (the "'286 Patent"), which is Hardwood's patent of an electroplating barrel that provides "an improvement in the design for the access aperture and closure door." (Id., col.1, lines 61-63.) Claims 1 and 4, the only independent claims of the '286 patent, require that the door means and access aperture means edges have an acute angle of about 10° to 80° to the plane of the aperture they define. (Def.'s 12(M) ¶ 51; '286 patent, col. 4, lines 57-58, col. 6, lines 1-2.) The door means and access aperture means have correspondingly angled edges that form an essentially wedge-shaped structure that permits the door means edges to be moved perpendicular to the plane of the aperture to maintain contact with the access aperture edges if the door member is too large or too small with respect to the access aperture dimension. (Def.'s 12(M) ¶¶ 59, 60; '286 patent, col. 4, lines 55-68, col. 5, lines 24-26, col. 6, lines 1-13; Fig. 3.) As a result, "[t]he particular design is of a forgiving nature so that a tight contact seal may be generally provided about the entire junction between the edges of the access aperture and the

3

closure door, even in the face of small, unplanned dimensional variations due to variations in the manufacture of the parts, or due to flexing or other stress of the electroplating barrel." ('286 Patent, col. 1, lines 63-68, col. 2, lines 1-2.) "Thus, the operator can be confident that small, flat objects to be electroplated will not find their way in between a gap between the electroplating barrel and its closure doors, when the doors are properly closed." (*Id.*, col. 2, lines 2-5.)

In 1998, Whyco designed and began to manufacture an electroplating barrel. (Def.'s 12(M) ¶ 5.) In the Whyco barrel, the primary contact edge of the barrel aperture which seals against the door panel ("aperture contact edge") is parallel to the plane of the aperture opening. (*Id.* ¶ 9.) The door includes a portion which extends outwardly into the aperture opening. (*Id.* ¶ 14.) In the Whyco barrel, each door opening edge is machined to have about a 0.020 inch gap with the adjacent aperture opening edge. (*Id.* ¶ 20.) Because of such gaps, small parts of the same dimensions may become wedged in the gap between the door panel and aperture opening when the Whyco barrel is used to electroplate such parts. (*Id.* ¶ 21.) The Whyco barrel's door is unable to move with respect to the aperture contact edges in a direction perpendicular to the plane of the aperture and still maintain contact along those edges. (*Id.* ¶ 22.) This is due to the fact that the door contact edges overlap the access contact edges and both are parallel to the aperture plane, at an angle of zero degrees with respect to the aperture plane. (*Id.*)

## DISCUSSION

Federal Rule of Civil Procedure ("Rule") 56(c) allows the Court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

4

that the moving party is entitled to a judgment as a matter of law." In considering the evidence submitted by the parties, we do not weigh it or determine the truth of asserted matters. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We "must view the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the nonmoving party." *Baron v. City of Highland Park*, 195 F.3d 333, 337 (7th Cir. 1999). If a reasonable jury could not find for the party opposing the motion, it must be granted. *Seshadri v. Kasraian*, 130 F.3d 798, 804 (7th Cir. 1997).

## I. Infringement

"To establish infringement of a patent, every limitation set forth in a claim must be found in an accused product or process exactly or by a substantial equivalent." *Becton Dickinson & Co. v. CR Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990). "A patent infringement analysis involves two steps: claim construction and a determination whether the accused product infringes the properly construed claim." *Cortland Line Co., Inc. v. Orvis Co., Inc.*, __ F.3d __, Nos. 99-1081, 99-1109, 2000 WL 156553, at *2 (Fed. Cir. Feb. 14, 2000).

### A. Claim Construction

"Claim construction is a question of law decided by the court." *Kraft Foods, Inc. v. International Trading Co.*, __ F.3d __, No. 99-1240, at *3, 2000 WL 156556, at *3 (Fed. Cir. Feb. 14, 2000). "[I]n interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582

5

(Fed. Cir. 1998). "The appropriate starting point . . . is always the language of the asserted claim itself." *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998).

In this case, there is no dispute regarding the interpretation of the language of the '286 patent claims. Out of the seven claims, the '286 patent has only two independent claims, claims 1 and 4. (Def.'s 12(M) ¶ 36.)[3] Claims 1 and 4 of the '286 patent require that the door means and access aperture means edges have an acute angle of about 10° to 80° to the plane of the aperture they define. (*Id.* ¶ 51; '286 patent, col. 4, lines 57-58, col. 6, lines 1-2.)[4] The door means and access aperture means have correspondingly angled edges that form an essentially wedge-shaped structure that permits the door means edges to be moved perpendicular to the plane of the aperture to maintain contact with the access aperture edges if the door member is too large or too small with respect to the access aperture dimension. (Def.'s 12(M) ¶¶ 59, 60; '286 patent, col. 4,

---

[3]The other '286 patent claims include: claim 2 that is dependent on independent claim 1; claim 3 that is dependent on claim 2; claim 5 that is dependent on independent claim 4; claim 6 that is dependent on claim 5; and claim 7 that is dependent on claim 5. (Def.'s 12(M) ¶ 42.)

[4]Claim 1 of the '286 patent in pertinent part states that the improvement made by the invention is that the "access aperture means ha[s] aperture-defining edges, said edges occupying planes which face inwardly relative to said barrel and they are at an acute angle of about 10° to 80° to the plane of the aperture they define" and that the door means has "angled edges that face outwardly relative to said barrel in engaging relation with said aperture defining edges, whereby door means shaped to fit said aperture means of the access aperture means, and defining correspondingly angled edges, may close said access aperture means without forming significant spaces between said door means and the aperture-defining edges." ('286 patent, col. 4, lines 54-68, col. 5, lines 1-3.)
Claim 4 states that the improvement is in part comprised of an "access aperture means having aperture-defining edges, said edges occupying planes which face inwardly relative to said barrel and they are at an acute angle of about 10° to 80° to the plane of the aperture they define" and "whereby door means shaped to fit each aperture of the access aperture means, and defining correspondingly angled edges, may close said access aperture means without forming significant spaces between said door means and the aperture-defining edges." (*Id.*, col. 5, lines 24-26, col. 6, lines 1-16.)

6

lines 55-68, col. 5, lines 24-26, col. 6, lines 1-13; Fig. 3.) The '286 patent specification further provides:

> The edges 42 surrounding each door members [sic] may be correspondingly angled, . . . so as to mate in substantially sealing relation with edges 36. It is not absolutely necessary for the angles of the respective angles 36, 42 to be absolutely identical, but it is generally preferable that they be close so as to fit snugly together, this snug fit preferably extending around the entire periphery of the engaging edges 36, 42. . . . Preferably the angles of edges 36, 42 to the plane of aperture 36 is about 20° to 80°, typically 30° to 60°.

(Def.'s 12(M) ¶ 49; '286 patent, col. 3, lines 62-68, col. 4, lines 1-2, 37-39.) The specification emphasized the advantage obtained by the invention:

> By means of the angled edges 36, 42 as used in this invention, it can be seen that the entire design of the access means of this invention is improved over the prior art, in that spaces between the joint of the closed door member and the access aperture periphery may be eliminated. Even though there may be dimensional variation between the respective parts, or even changes of dimension due to flexing and stretching, door member 38 can be expected to seat tightly and reliably in its aperture 26, with door member 38 being advanceable outwardly through a range of positions until it is well seated without any gaps.

(Def.'s 12(M) ¶ 58; '286 patent, col 4, 22-33.)

In addition, the prosecution history sheds light on the scope of the '286 claims. "Arguments and amendments made during the prosecution of a patent application and other aspects of the prosecution history . . . must be examined to determine the meaning of terms in the claims." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). After the PTO rejected the original '286 patent application, Lazaro amended the claims that correspond to claims 1, 2, and 3 of the '286 patent stating:

> [T]he Examiner has asked for the cancellation of Claims 10 and 11 and has consented to the addition of claims 13, 14, and 15 based on the fact that the new claims contain patentable subject matter since, among other things, none of the prior art references show the reversing inclines of the door facing outwardly

7

> relative to the barrel cooperating with aperture-defining edges that are inclined and face inwardly with respect to the barrel.

(Def.'s Exs. Supp. Mot. Dismiss, Ex. L at L37-38.) It is undisputed that there is no inconsistency between the meaning of "an acute angle of about 10° to 80° to the plane of aperture" in the claims and how those terms are used in the specification of the '286 patent. (Def.'s 12(M) ¶ 50.) Therefore, upon review of the '286 patent claim limitations and the prosecution history, the Court finds that the '286 patent requires the door means to have an acute angle of about 10° to 80° of the plane of the aperture and requires the access aperture means to have correspondingly angled edges.

### B. Noninfringement

"The second step of the infringement analysis, determining whether a particular device infringes a properly construed claim, is a question of fact." *Ethicon Endo-Surgery, Inc. v. US Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998). Thus, "it is amenable to summary judgment where, inter alia, no reasonable fact finder could find infringement." *Id.* The patentee has the "burden of proving by preponderant evidence that every limitation set forth in the asserted claim is found in the accused product, either literally or by substantial equivalent." *See Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1196 (Fed Cir. 1994).

## 1. Literal Infringement[5]

Nowhere in Hardwood's response brief or Local General Rule 12(N) statement does Hardwood argue that Whyco's barrel is a literal infringement of the '286 patent. In fact, Hardwood states: "[Defendant] points out that the Whyco plating barrel with square corner and 0 and 90 degree edges does not infringe the '286 patent with its acutely angled edges. This may be true, literally, but not equivalently or in practice because warpage precludes the Whyco barrel from working as it claims." (Pl.'s Resp. Br. at 7.)

Even if Hardwood had not conceded this point, based on the facts raised in the parties' Local General Rule 12 submissions, no reasonable jury could find that Whyco's barrel is a literal infringement of the '286 patent. As discussed above, it is undisputed that claims 1 and 4 of the '286 patent require that the door means and access aperture means edges have an acute angle of about 10° to 80° to the plane of the aperture they define, and thus the door means and access aperture means have correspondingly angled edges which form an essentially wedge-shaped structure. Further, it is undisputed that the door means and the access aperture means in the Whyco barrel do not have correspondingly angled edges and do not form a wedge-shaped structure. Hardwood merely opines that after long hours of operation, the plastic warps due to stress, flexing, heat, and chemicals making it difficult to maintain 0° flat surfaces as well as perpendicular surfaces at 90° and thus the 90° angle of the Whyco door means edge is really

---

[5]Where a claim delineates a structure that describes what the means does and not what the means is, that element is scrutinized under the means plus function analysis of 35 U.S.C. § 112(6). *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1536 (Fed. Cir. 1991). In this case, however, it is clear that the relevant elements describe what the door means is structurally, and thus the Court proceeds in its analysis accordingly.

closer to 80°. (Lazaro Decl. ¶ 10.) This statement, however, does not refute the fact that the door means and the access aperture means on the Whyco barrel do not have correspondingly angled edges that form a wedge-shaped structure. Because the limitations in claims 1 and 4 of the '286 patent are not found in the accused device, the Court finds no literal infringement.

## 2. Doctrine of Equivalents

Under the doctrine of equivalents, "an accused product that does not literally infringe a claim may infringe 'if it performs substantially the same function in substantially the same way to obtain the same result.'" *Becton Dickinson & Co. v. CR Bard, Inc.*, 922 F.2d 792, 797 (Fed. Cir. 1990) (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)). A limitation to the doctrine of equivalents is prosecution history estoppel, which "limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985). "The relevant inquiry is whether a competitor would reasonably believe that the applicant had surrendered relevant subject matter." *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998). "Either amendments or arguments made by an applicant may be the basis for this conclusion." *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1462 (Fed. Cir. 1998). Whether prosecution history estoppel applies is a question of law. *Augustine Medical, Inc. v. Gaymar Inds., Inc.*, 181 F.3d 1291, 1298 (Fed. Cir. 1999).

As discussed above, the PTO rejected the original application for the '286 patent. In amending the claims that correspond to claims 1, 2, and 3 of the '286 patent, the applicant made

10

clear representations as to the scope of the limitation to overcome prior art: "[T]he new claims contain patentable subject matter since, among other things, none of the prior art references show the reversing inclines of the door facing outwardly relative to the barrel cooperating with aperture-defining edges that are inclined and face inwardly with respect to the barrel."[6] (Def.'s Exs. Supp. Mot. Dismiss, Ex. L at L37-38.) The submitted new claim that corresponds to claim 1 provided:

> The improvement comprising, in combination:
> said access aperture means having aperture-defining edges, said edges occupying planes which face inwardly relative to said barrel and they are at an acute angle of about 10° to 80° to the plane of the aperture they define, and retaining means for holding said door means in engaging relation with said aperture defining edges to close said access aperture means, said door means being of rectangular shape and having first, opposed sides longer than second opposed sides, said door means defining angled edges that face outwardly relative to said barrel in engaging relation with said aperture defining edges, whereby door means shaped to fit said aperture means of the access aperture means, and defining correspondingly angled edges, may close said access aperture means without forming significant spaces between said door means and the aperture-defining edges.

(*Id.* at L36-37.) Thus, the prosecution history prevents the application of the doctrine of equivalents from extending coverage of the '286 patent to include electroplating barrels such as Whyco's barrel that do not feature corresponding angles of the edges of the access aperture means, which face inwardly with respect to the barrel at an acute angle of about 10° to 80° to the plane of the aperture, and the edges of the door, which face outwardly relative to the barrel.

---

[6]Although this argument was made only in support of the claims that correspond to claims 1, 2, and 3 of the '286 patent, it is undisputed that the term "an acute angle of about 10° to 80° to the plane of the aperture" as used in claim 1 is consistent with the term as used in claim 4. (Def.'s 12(M) ¶ 50.)

11

Even if prosecution history estoppel were inapplicable in this case, the doctrine of equivalents does not save the day for Hardwood. "There can be no denying that the doctrine of equivalents, when applied broadly, conflicts with the definitional and public-notice functions of the statutory claiming requirement." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 29 (1997). Accordingly, "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Id.* "It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety." *Id.* "To be a 'substantial equivalent,' the element substituted in the accused device for the element set forth in the claim must not be such as would substantially change the way in which the function of the claimed invention is performed." *Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1533 (Fed. Cir. 1987).

Hardwood compares its current barrel to Whyco's barrel to support its argument that the doctrine of equivalents applies. However, "[t]he test for infringement is not whether the accused product is substantially similar to the patentee's commercial embodiment of the claimed design." *Sun Hill Inds., Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196 (Fed. Cir. 1995). "Such a test risks relying on unclaimed and therefore irrelevant features as grounds for similarity or difference." *Id.* Accordingly, the Court declines Hardwood's invitation to compare Whyco's barrel to the Hardwood's current commercial embodiment that is distinct from the patented design.

Further, the Court declines Hardwood's invitation to compare the patented design to a

12

hypothetical altered version of Whyco's barrel that is warped and stretched after long hours of use. The Court declines to do so because the patent infringement analysis requires the Court to find all of the claim limitations or their equivalent in the *actual* accused device. *See Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 798 (Fed. Cir. 1990).

Whyco argues that its barrel lacks an equivalent to the "acute angle of about 10° to 80° to the plane of the aperture" limitation of the '286 patent and therefore, an important limitation of the claims is absent. The Court agrees. The '286 patent contains a limitation that specifically requires a relationship between the angle of the edges of the door and aperture means. The wedge-shaped structure created by the corresponding angles seals the barrel with no significant spaces even if the door member is too large or too small with respect to the access aperture dimension. ('286 patent, Fig. 2, at C2; Def.'s 12(M) ¶ 59.) In contrast, the door and aperture means of the Whyco barrel lacks a wedge-shaped structure or its equivalent and thus the Whyco barrel is not forgiving if the door member is too large or too small. (*See* Def.'s 12(M) Fig. W-3.) In contrast, because of the gaps between the aperture contact edge and the door contact edge in the Whyco barrel, small parts of the same dimension may become wedged in the gap. (*Id.* ¶ 21.) Unlike the claimed invention in the '286 patent, it is impossible for the edges of the Whyco door to move with respect to the aperture edges in a direction perpendicular to the plane of the aperture and still maintain contact along those edges because the door contact edges overlap the access contact edges and both are parallel to the aperture plane. (*Id.* ¶ 22.) Even if the Court were to assume that the wedge-shape structure required by the '286 patent and Whyco's door structure perform the same function of providing a tight seal, the substantially different manner in which the tight seal is achieved leads the Court to hold as a matter of law that no reasonable

13

jury could find that the Whyco barrel infringes the '286 patent under the doctrine of equivalents. To hold otherwise would permit the doctrine of equivalents to eliminate, in essence, important elements of the '286 patent in their entirety.

## II. Unfair Competition

Next, Hardwood claims that the term "I/O DOOR" is a protectible trademark.[7] "[A] term for which trademark protection is claimed generally fits somewhere in the spectrum of classifications ranging from (1) generic or common descriptive and (2) merely descriptive to (3) suggestive and (4) arbitrary or fanciful." *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 991 (7th Cir. 1989).

> A generic or common descriptive term is one which is commonly used as the name or description of a kind of goods. It cannot become a trademark under any circumstances. . . .
> A merely descriptive term specifically describes a characteristic or ingredient of an article. It can, by acquiring a secondary meaning, *i.e.*, becoming "distinctive of the applicant's goods" (15 U.S.C. § 1052(f)), become a valid trademark. . . .
> A suggestive term suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods. Such a term can be protected

---

[7]Hardwood does not assert that the alleged "I/O DOOR" trademark is registered with the United States Patent and Trademark Office in either the Complaint or its Local General Rule 12 submission. Thus, the burden falls on Hardwood to prove that its mark is a protectible trademark. *National Conference of Bar Exam'rs v. Multistate Legal Studies, Inc.*, 692 F.2d 478, 488 (7th Cir. 1982); *Reese Publ'g Co., Inc. v. Hampton Int'l Communications, Inc.*, 620 F.2d 7, 11 (2d Cir. 1980).

> without proof of a secondary meaning. . . .
> An arbitrary or fanciful term enjoys the same full protection as a suggestive term but is far enough removed from the merely descriptive not to be vulnerable to possible attack as being merely descriptive rather than suggestive.

*Miller Brewing Co. v. G. Heileman Brewing Co., Inc.*, 561 F.2d 75, 79 (7th Cir. 1977). "Terms which are arbitrary, fanciful, or suggestive as applied to a given product or service are naturally understood by the consuming public as designations of origin: it is unlikely that such terms would be understood as anything else." *Walt-West Enters. v. Gannett Co., Inc.*, 695 F.2d 1050, 1057 (7th Cir. 1982). "Descriptive terms, on the other hand, are ill-suited to serve as designations of origin, for such terms are naturally understood by the consuming public in their ordinary descriptive sense." *Id.* "[T]he true test is one of consumer perception–how is [the term] perceived by the average prospective consumer?" *G. Heileman Brewing*, 873 F.2d at 994. The "classification of a term on the trademark spectrum is a factual determination . . . ." *Id.* at 992.

Upon reviewing the parties' Local General Rule 12 submissions,[8] the Court finds that there is a genuine issue as to a material fact regarding whether the term "I/O DOOR" is protectible. First, Whyco relies on the affidavit of Robert Hyner, Vice President of Whyco Technologies, who, not surprisingly, states that the terms "I/O DOOR" and "inside out door" are "used in the electroplating industry to be the common descriptive or generic name of a type of

---

[8]Although the Court has deemed admitted paragraphs 73, 74, 75, 76, 78, and 79, due to Hardwood's failure to properly support its denial of those factual statements, Hardwood has properly denied paragraphs 72 and 77. While Whyco makes some of the same factual statements in the paragraphs which have been deemed admitted and in those paragraphs which have been denied and properly supported, the Court, viewing all of the facts and reasonable inferences in a light most favorable to Hardwood, must consider the disputes raised by Hardwood's properly supported denials of Whyco's statements of facts.

15

plating barrel which is secured from the inside, rather than the outside, of the barrel aperture." (Hyner Aff. ¶ 8; *see* Def.'s 12(M) ¶ 72.) It is unclear whether Hyner attempts to equate "the electroplating industry" with consumers of electroplating barrels or whether he is merely stating industry perceptions. Unfortunately, the Court has very little information as to Hyner's qualifications for expressing such an opinion. Because Whyco not only manufactures and sells plating barrels, but also does electroplating on a contract basis, it presumably has *some* familiarity with consumers of electroplating barrels. However, Hyner does not tell the Court how much experience he personally has with this end of the business. It is, of course, the consuming public's perception that is at issue, not the industry's. *See Sam's Wines & Liquors, Inc. v. Wal-Mart Stores, Inc.*, No. 92 C 5170, 1994 WL 529331, at *10 (N.D. Ill. Sept. 27, 1994). Thus, even if uncontested, the Court cannot give controlling weight to Hyner's attestation and those factual statements reliant thereon.

Whyco also relies on Hardwood's use of the terms "inside outside door" and "I/O door" without the "TM" superscript in its brochure to argue that even Hardwood treats the terms as a generic description of a class of door. (Def.'s 12(M) ¶ 72; Def.'s Ex. J at J6, 7, 8, 11.) However, Hardwood disputes this statement of fact and cites in support two instances in the same brochure in which Hardwood uses the "TM" symbol next to the term "I/O." Thus, Hardwood's inconsistent treatment of the "I/O" term raises a dispute as to whether Hardwood treats the alleged trademark as a generic description of a certain type of electroplating barrel door.

In addition, Whyco relies on a properly authenticated letter from a customer who stated that the electroplating barrel "must have [an] 'inside/outside' door." (*See* Def.'s 12(M) ¶ 72; Def.'s Ex. I, Letter of 2/18/99.) Although Hardwood contends this is a hearsay statement, it

16

clearly is not. (*See* Lazaro Decl. ¶ 21.) Whyco is not offering the statement to prove the truth of the matter asserted, *i.e.*, that the customer desired a barrel only if it had an inside/outside door. It is offering the statement to prove that the term "inside/outside" was used as a generic description of the type of door the customer desired. Hardwood disputes the fact that the customer used the term as a generic description and argues that the customer's use of quotations around the term "inside/outside" could be interpreted to mean that the customer thought it was asking for a door that a particular company made, *i.e.*, Hardwood, and not just a class of doors. (*Compare* Def.'s 12(M) ¶ 72, *with* Pl.'s 12(N) ¶ 72.) Thus, a factual dispute exists as to whether the average electroplating barrel consumer perceives the terms "inside outside door" and "I/O door" to be a generic description of a class of doors.

Whyco argues that even if the term "I/O" is a protectible trademark, Whyco has not used the term in a trademark sense and therefore, Whyco's use of the term is "fair use" under 15 U.S.C. § 1115(b)(4). To prevail under that provision, however, Whyco must show that: (1) the alleged trademark is merely descriptive of the goods; (2) Whyco did not use the term as a trade mark; and (3) Whyco used the mark fairly and in good faith. *See* 15 U.S.C. § 1115(b)(4); *see, e.g., Seaboard Seed Co. v. Bemis Co., Inc.*, 632 F. Supp. 1133, 1138 (N.D. Ill. 1986).

Whyco has established the second prong of the fair use defense because it is undisputed that Whyco does not use the terms "I/O" and "inside outside door" in a trademark sense. (Def.'s 12(M) ¶ 79.) However, for the reasons discussed above, Whyco has failed to show that its use of those terms is merely descriptive of its electroplating barrel door and, accordingly, a dispute exists as to that material fact. Further, the record is devoid of evidence of Whyco's intent, *i.e.*, whether it used the terms "I/O" in good faith. Therefore, the Court finds that Whyco has failed

17

to show an absence of a genuine issue of material fact as to whether the fair use defense applies.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Whyco's motion to dismiss which was converted to a motion for summary judgment (Docket No. [9-1]). The Court grants the motion as to Count I (patent infringement) and denies the motion as to Count II (trademark infringement and unfair competition) of the Complaint.

**SO ORDERED**  ENTERED: 3/17/00

*Ronald A. Guzman*
**HON. RONALD A. GUZMAN**
**United States Judge**